In the Matter of the Estate of ARLINGTON C. HALL, Deceased. LAURA E. HALL et al., Appellants; HARVEY M. HALL et al., Respondents.

HEFFERNAN, J. (dissenting). I am not in accord with the decision about to be rendered by this court.

Arlington C. Hall died a resident of the State of Florida on December 2, 1948. He left surviving his widow, the appellant, a brother, a sister and two nieces. On the 27th day of July, 1945, decedent executed a will by the terms of which he devised his entire estate to his widow and his brother Harvey M. Hall. In that will he named his widow, his brother Harvey M. Hall, and his lawyer John Kadel as his executors. On the 26th day of October, 1945, he executed a new will by the terms of which his entire estate went to his widow. In that instrument he named his widow as sole executrix. The will of October revoked the will of July. She, following his death, offered the October will for probate and it was admitted to probate in Dade County, Florida.

It is the claim of the respondents that on June 28, 1948, the decedent executed another will which revoked all previous wills.

The will of June 28, 1948, was drafted by Mr. Kadel at his office in the city of New York. On this appeal the widow contends that at the time of the execution of the will of June 28, 1948, decedent either lacked testamentary capacity or that he never assented to the terms of this document even though he actually signed it. The court below found that the June, 1948, will was valid and intended by the testator to be so, that it was properly executed and subscribed and that its revocation the day after its execution was effective to destroy its testamentary effect and since no subsequent will was published that decedent died intestate.

From the record in this case I am convinced that on June 28, 1948, decedent was in such a state of mind as to be incompetent to make a will. He signed the purported will on the date in question at about 6:30 P.M. At 8:30 A.M. on the following morning he sent for the paper for the purpose of having it read by his employee named Carr. He read the instrument himself and after doing so he directed that it be immediately destroyed which was done. At the time he directed the destruction of the alleged will he stated that he did not want the draftsman of the instrument to be his executor nor did he assent to the statement contained therein that he was a resident of the State of New York. In the light of what he did and said on the day following the execution of this purported will, one can readily understand that decedent never adequately grasped the contents of the paper on the 28th and that when he read it the following day and understood its provisions he immediately ordered its destruction.

There are serious contradictions in the testimony of the various witnesses as to just what transpired in the lawyer's office while the purported will was being drafted. Unquestionably the draftsman, without consulting decedent, directed the law stenographer to insert the provision naming him as an executor and also the sentence as to decedent's New York residence. These

two statements were literally copied from the will of July, 1945. The proof is crystal clear that decedent never assented to either statement.

After careful consideration of the record on appeal I cannot escape the conviction that the document executed by decedent on June 28, 1948, was not his will but the will of the draftsman. Likewise, I am convinced that decedent had no understanding of what he was doing. He never intended to die intestate. It would be a wicked perversion of justice to hold that the document of June 28, 1948, is a valid will.

The decree appealed from should be reversed, with costs.

Callahan, J. P., Van Voorhis, Shientag and Bergan, JJ., concur in decision; Heffernan, J., dissents and votes to reverse in opinion.

Decree affirmed, with costs. No opinion.